IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| REBEKAH D.M.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 4:22-cv-04015-SLD-JEH |

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 10), the Commissioner's Motion for Summary Affirmance (Doc. 14), and the Plaintiff's Reply (Doc. 16). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Rebekah D.M. filed an application for disability insurance benefits (DIB) on April 8, 2019, alleging disability beginning on February 20, 2019. Her DIB claim was denied initially on July 18, 2019 and upon reconsideration on January 30, 2020. After a request for hearing before an administrative law judge, a hearing was held on March 19, 2021 before the Honorable David R. Bruce (ALJ). At the hearing, Rebekah was represented by an attorney, and Rebekah, Rebekah's daughter, and a vocational expert (VE) testified. Following the hearing, Rebekah's claim was denied on March

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 7) on the docket.

1

30, 2021. Her request for review by the Appeals Council was denied on November 18, 2021, making the ALJ's Decision the final decision of the Commissioner. Rebekah timely filed the instant civil action seeking review of the ALJ's Decision on January 24, 2022.

## II

Rebekah challenges the ALJ's Decision for the following reasons: 1) the ALJ committed harmful legal error by playing doctor in assessing Rebekah's headaches; 2) the ALJ committed harmful legal error by finding her headaches were a severe impairment at Step Two, yet failed to provide the requisite narrative explanation pursuant to SSR 96-8p in the RFC assessment as to why she would not be absent from work or off-task during these chronic headache episodes; and 3) the ALJ's credibility assessment was patently wrong as it relied on the erroneous equation of improvement with non-disability.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past

3

work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Rebekah claims error on the ALJ's part at Step Four.

### A

At Step One, the ALJ determined Rebekah had not engaged in substantial gainful activity since February 20, 2019, the alleged onset date. AR 16. At Step Two, the ALJ determined Rebekah had the following severe impairments: fibromyalgia; headaches; kidney failure; and carpal tunnel syndrome. *Id*. At Step Three, the ALJ determined Rebekah did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 18. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except handle and finger items frequently bilaterally; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stop, kneel, crouch or crawl; and cannot have concentrated exposure to unprotected heights, moving mechanical parts, extreme cold, extreme heat, vibration or noise.

*Id*. The ALJ determined that Rebekah was capable of performing her past relevant work as a billing coder and assistant manager. AR 20. Based on the VE's testimony, the ALJ also concluded that considering Rebekah's age, education, work experience, and RFC, Rebekah was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. AR 22. Thus, the ALJ determined Rebekah had not been under a disability from February 20, 2019 through the date of the Decision. *Id*.

### B

Rebekah first argues that the ALJ failed to rely on an expert medical opinion and instead played doctor in assessing the impact of Rebekah's intractable headaches. Specifically, she faults the ALJ for citing to a single treatment note out of nine

treatment dates in the record from treating Advanced Registered Nurse Practitioner (ARNP) Alicia Duyvejonck, for failing to confront the entirety of even that one record, and for failing to consider the consistency and supportability of ARNP Duyvejonck's opinion in accordance with the regulations.  In response, the Commissioner points to the ALJ's consideration of the State Agency consulting doctors' findings and argues that the ALJ discussed with specificity how their findings were supported by and consistent with the record.  The Commissioner says that analysis was grounded in substantial evidence.  Also, the Commissioner argues that the ALJ's evaluation of ARNP Duyvejonck's opinion adhered to the regulations as he found the opinion unpersuasive due to its inconsistency with the evidence of record and limited supportability from her own notes.  Importantly, an ALJ's decision must be both supported by substantial evidence *and* use the correct legal standards.  *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *see also Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (reviewing court "will reverse an ALJ's denial of disability benefits only if the decision is not supported by substantial evidence or is based on an error of law"); *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("A reversal and remand may be required . . . if the ALJ committed an error or law, [], or if the ALJ based the decision on serious factual mistakes or omissions").

ARNP Duyvejonck, who was a headache specialist in neurology[2], opined in a November 20, 2020 form opinion that:  beginning in January 2019, she treated Rebekah for chronic migraines; Rebekah's symptoms would interfere to the extent that she was unable to maintain persistence and pace to engage in competitive employment; Rebekah was not capable of functioning on a part-time basis in a competitive work setting; Rebekah was likely to miss work more than four times per month due to symptoms related to her physical impairments; she required four to eight daily additional unscheduled breaks for 15 to 30 minutes; and her routine

---

[2] AR 702.

physical activity increased her migraine pain significantly, including even basic activities of daily living. AR 700-01. The ALJ found ARNP Duyvejonck's opinion "not persuasive," and stated as follows:

> There is no support for the statement that [Rebekah's] symptoms are disabling. There is no evidence of repeated episodes of decompensation, no formal mental health treatment and no evidence she has marked limitations in any of the B criteria areas. She is not a mental health provider. The nurse practitioner completing the form consistently documents normal neurological exams, normal psychiatric exams, and indicates the claimant improved with migraine injections and medications.

AR 20.[3] The ALJ cited just one of ARNP Duyvejonck's treatment records which was dated February 11, 2021.

The ALJ's articulation of the reasons for finding ARNP Duyvejonck's opinion "not persuasive" highlights a fatal legal error in the ALJ's Decision. An ALJ may not ignore contrary evidence, but instead must confront the evidence that does not support his conclusion and explain why that evidence was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). In other words, the ALJ may not cherry pick the record evidence, but that is exactly what the ALJ here did. Earlier in his Decision, the ALJ detailed: that Rebekah was started on amitriptyline in April 2019; that her medication was changed in July 2019; that she was started on Aimovig injections in December 2019 at which time she reported substantial improvement in the severity of her headaches; that she reported continued improvement in March 2020; that she indicated, with injections and medication for acute migraine, her symptoms were managed in November 2020; and that she stated the injections were no longer as effective and she was started on Emgality in February 2021. AR 19. The ALJ concluded that, "Overall, she has shown improvement with treatment and there is no evidence of emergent treatment." *Id*. Later, in support of his finding that additional

---

[3] The ALJ's discussion of evidence pertaining to Rebekah's depression – i.e., psychiatric exams and mental health treatment – is not addressed in this R&R as it is irrelevant to the issue before the Court.

6

limitations beyond those set forth in the RFC finding were not indicated, the ALJ noted Rebekah improved with treatment for her headaches. AR 20. In support of his finding that the State Agency consultants' opinions were persuasive, the ALJ stated that Rebekah's "chronic conditions improved with treatment." *Id*. Finally, the ALJ stated, "I find the claimant has the above [RFC] assessment, which is supported by the overall stability of the claimant's condition, and improvement with treatment . . . ." *Id*.

Repeatedly throughout the Decision, the ALJ emphasized and used as support for his various findings that Rebekah's migraine headaches improved with treatment. What he did *not* mention is that a February 2020 treatment note by ARNP Duyvejonch provided that, "When [Rebekah] started Aimovig 70 mg, the severity of her headache symptoms improved for a week, then severity returned." AR 686. A March 2020 treatment note by provider Nicholas Crippin, D.O., provided that, "There has been some mild improvement with current regimen [for Rebekah's headaches]." AR 688. A June 2020 treatment note by ARNP Duyvejonck provided Rebekah's migraine pain was a 3-4/10 and tolerable "x2 weeks after injection, this increases to 8-10/10 the subsequent two weeks." AR 694. A chart ARNP Duyvejonck prepared indicated that two of three preventative migraine treatments and five of seven acute migraine treatments Rebekah had tried up to that point in June 2020 were discontinued because ineffective. AR 695. A November 2020 treatment note by ARNP Duyvejonck provided that Rebekah "[w]ill have only mild headaches x2 weeks after taking injection but then severity increases again." AR 697. At that time, ARNP Duyvejonck's chart was updated to reflect three discontinued preventative migraine treatments because ineffective. AR 698. The very February 2021 treatment note the ALJ cited in support of his rejection of Duyvejonck's opinion provided that Rebekah's then-current medication, Ajovy, was "helpful x2 weeks, but it then wears off. This benefit seems to be declining . . . Hasn't taken Ubrelvy, Nurtec or Reyvow recently, these have not bee [sic] helpful." AR 754. The note also included the "Preventative

Migraine Treatment History" chart which now listed four medications, three of which had been discontinued because "ineffective" and the fourth was then-currently being taken by Rebekah.  AR 755.  The "Acute Migraine Treatment History" chart again listed seven medications, five of which had been discontinued because "ineffective" and the eighth and ninth were then-currently being taken by Rebekah.  *Id*.  Rebekah's neurologic exam was normal that day.  AR 756.  Under "Assessment/Plan," ARNP Duyvejonck wrote that Rebekah had "[c]hronic migraine without aura, intractable," that Ajovy was to be discontinued and Rebekah was to start Emgality, and that Rebekah was to use several other medications to treat her migraines.  *Id*.  To the extent the ALJ cited with favor Rebekah's reports of improvement on her migraine medications, he was remiss in failing to cite and discuss Rebekah's reports that her improvement was only temporary.  He was further remiss in failing to confront treatment records which provided in a single snapshot that Rebekah's "improvement" she received on migraine medications was neither sustained nor even long-lasting on any one medication given that she cycled through several over the course of approximately two years.  There is evidence Rebekah invariably complained of the increased severity of migraine symptoms after a period of time on whatever medication she was then taking for her migraines.  The Court cannot help but find that the ALJ chose to ignore certain evidence, evidence more favorable to Rebekah's claim than the evidence he explicitly discussed.  *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding").

      Even putting aside any potential shortcomings in the ALJ's consideration of the consistency of ARNP Duyvejonck's opinion, the ALJ's foregoing omissions seriously undermine his consideration of the record support (or lack thereof) for her opinion pursuant to 20 C.F.R. § 404.1520c(b)(2).  As Rebekah argues, the ALJ played doctor in assessing her headaches where he displaced ARNP Duyvejonck's evaluation of

8

Rebekah's migraines in favor of his own. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"). ARNP Duyvejonck necessarily had a better grasp on the relative nature of Rebekah's improvement with medication given her longitudinal perspective coupled with her specialization (neurology, headache specialist). *See* 20 C.F.R. § 404.1520c(c)(4) ("The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty"). That he played doctor is made more apparent by the ALJ's emphasis upon Rebekah's unremarkable December 2018 head imaging and normal neurological exams. He cited such evidence in support of his conclusion that "the evidence does not show that the claimant's headaches are disabling." AR 19. In *Moon v. Colvin*, the Seventh Circuit explained the ALJ's reliance on the claimant's "unremarkable" MRI as evidence that her migraines were not a significant problem as not supportable. 763 F.3d 718, 722 (7th Cir. 2014). The *Moon* court pointed out that, "Doctors use MRIs *to rule out other possible causes of headache* . . . meaning that an unremarkable MRI is completely consistent with a migraine diagnosis." *Id*. (emphasis in original). The *Moon* court continued, "This mistaken reading of the evidence illustrates why ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Id*. Moreover, as Rebekah points out, the ALJ appears to have given no consideration to the additional tests to which Rebekah submitted and which ARNP Duyvejonck considered in an effort to rule out other causes for Rebekah's headaches. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior

9

administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be").

The ALJ's consideration of and reliance upon the State Agency consultants' opinions do not render the ALJ's error harmless. If anything, that his error is harmful is only highlighted further by the fact that two of his stated reasons for finding their opinions persuasive was that Rebekah's chronic conditions improved with treatment and her neurological exams were normal. The Court cannot say with any confidence that the same outcome would result on remand or that the instant Decision is overwhelmingly supported by the record. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) ("we will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same").

### C

Rebekah additionally argues that the ALJ failed to support the RFC assessment with a sufficient narrative explanation detailing why the record did not support likely absences from work given her experience of debilitating headaches three to four days a week, and the ALJ's credibility assessment was impermissibly based on the unfounded inference that because Rebekah showed temporary improvement for half of each month on medication her migraines were not disabling. It is clear from a reading of the ALJ's Decision as a whole that he did not account for work-preclusive absences from work due to headaches because he determined the record evidence did not support the alleged intensity, persistence, or limiting effects of Rebekah's headaches. Insofar as the ALJ repeatedly referred to Rebekah's headache improvement with treatment throughout his narrative discussion at Step Four, that narrative discussion and his subjective symptom assessment are tainted just as his consideration of ARNP Duyvejonck's opinion is. The Court recommends remand.

### IV

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 10) be granted; 2) the Defendant's Motion for

10

Summary Affirmance (Doc. 14) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion Pursuant to 42 U.S.C. §405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended*.

Entered on December 14, 2022.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE