UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| REBEKAH D. M., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:22-cv-04015-SLD-JEH |
| KILOLO KIJAKAZI, | ) ) ) |
| Defendant. | ) |

ORDER

Before the Court are Plaintiff Rebekah D. M.'s motion for summary judgment, ECF No. 10; Defendant Acting Commissioner of Social Security Kilolo Kijakazi's ("the Commissioner") motion for summary affirmance, ECF No. 14; Magistrate Judge Jonathan E. Hawley's report and recommendation ("R&R"), ECF No. 17, recommending that the Court grant Rebekah's motion, deny the Commissioner's, and remand for further proceedings; and the Commissioner's objection to the R&R, ECF No. 19. For the reasons that follow, the objection is OVERRULED, the R&R is ADOPTED, the motion for summary judgment is GRANTED, and the motion for summary affirmance is DENIED.

**BACKGROUND[1]**

## I.  Procedural Background

On April 8, 2019, Rebekah filed an application for disability insurance benefits, alleging disability beginning February 20, 2019. Her claim was denied initially and upon reconsideration. Rebekah then requested a hearing, which took place before an administrative law judge ("ALJ") on March 19, 2021. The ALJ issued a decision denying Rebekah's claim for benefits on March

---

[1] The administrative record can be found at ECF No. 7. Citations to the record take the form: R. _.

1

30, 2021.  The Appeals Council denied her request for review on November 18, 2021; as such, the ALJ's March 30, 2021 decision is the final decision of the Commissioner.  *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).  Rebekah timely filed this suit, seeking judicial review pursuant to 42 U.S.C. § 405(g).  Compl. 1, ECF No. 1.  Rebekah filed a motion for summary judgment on June 24, 2022, and the Commissioner filed a motion for summary affirmance on July 21, 2022.  The matter was referred to Judge Hawley for a recommended disposition, and he entered an R&R on December 14, 2022.  The Commissioner timely filed an objection on December 28, 2022.

## II.     ALJ Decision

The ALJ conducted the standard five-step sequential analysis set forth in 20 C.F.R. § 404.1520(a)(4), concluding that Rebekah was not disabled during the relevant period.  R. 15.  At step one, he found that Rebekah had not engaged in substantial gainful activity since February 20, 2019, the alleged onset date.  R. 16.  At step two, he found that Rebekah had the following severe impairments: fibromyalgia, headaches, kidney failure, and carpal tunnel syndrome.  R. 16.  At step three, the ALJ found that the severity of Rebekah's impairments, considered singly and in combination, did not meet or medically equal the criterial of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 18.   Next, he found that Rebekah had the residual functional capacity ("RFC") to

> perform light work as defined in 20 C.F.R. 404.1567(b) except handle and finger items frequently bilaterally; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch or crawl; and c[ould ]not have concentrated exposure to unprotected heights, moving mechanical parts, extreme cold, extreme heat, vibration or noise.

R. 18.  At step four, the ALJ found that Rebekah was capable of performing her past relevant work as a billing coder and assistant manager.  R. 20.  In the alternative, at step five, the ALJ

determined that, given Rebekah's age, education, work experience, and RFC, there were other jobs existing in significant numbers in the national economy that she could perform. R. 21. Accordingly, the ALJ found that Rebekah was not disabled. R. 22.

### DISCUSSION

### I. Legal Standards

When a matter dispositive of a party's claim or defense is referred to a magistrate judge, the magistrate judge will "enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1). A party may file written objections to the R&R within fourteen days of its service. *Id*. 72(b)(2). The district judge will then "determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id*. 72(b)(3). Any unobjected portions will be reviewed for clear error only. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

In cases in which an ALJ has denied Social Security benefits to the plaintiff, the court "will uphold [the] ALJ's decision as long as the ALJ applied the correct legal standard, and substantial evidence supports the decision." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted). While the ALJ "is not required to provide a complete and written evaluation of every piece of testimony and evidence," he "must build a logical bridge from the evidence to his conclusion." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quotation marks omitted). The court reviewing the ALJ's decision will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner" but must nevertheless "conduct a

critical review of the evidence." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quotation marks omitted).

  II.  **Analysis**

   a.  **Identification of Issues**

In her motion for summary judgment, Rebekah contends that the ALJ erred in assessing evidence related to her headaches. First, she argues that the ALJ improperly discounted the medical opinion of her treating neurology Advanced Registered Nurse Practitioner ("ARNP") Alicia Duyvejonck. Pl.'s Mem. Supp. Mot. Summ. J. 7–8, ECF No. 11. Next, she claims that "the ALJ failed to provide the requisite narrative explanation in the RFC assessment surrounding absences and off-task time due to her chronic intractable headaches." *Id*. at 8. Finally, she maintains that the ALJ's "credibility assessment [wa]s patently wrong as it erroneously equated headache improvement with non-disability." *Id*.

Judge Hawley finds that the ALJ committed a "fatal legal error" in his assessment of ARNP Duyvejonck's opinion: he "cherry pick[ed] the record evidence," ignoring evidence that did not support his conclusion. R&R 6. In particular, he repeatedly "emphasized and used as support for his various findings that Rebekah's migraine headaches improved with treatment" but failed to confront pervasive evidence that this relief was temporary and that the severity of her headaches would invariably return, even as she cycled through a variety of medications. *Id*. at 7–8. Moreover, the ALJ impermissibly "played doctor" by interpreting objective medical evidence, including an MRI and neurological exams, on his own instead of relying on the opinions of medical experts such as ARNP Duyvejonck. *Id*. at 8–9. Judge Hawley further concludes that the ALJ's failure to account for the temporary nature of the relief Rebekah obtained from migraine medication likewise taints his explanation of Rebekah's RFC and his

assessment of Rebekah's subjective symptoms.  *Id*. at 10.  Accordingly, he recommends that the case be remanded to the Commissioner.  *Id*. at 10–11.

The Commissioner objects to Judge Hawley's finding that the ALJ erred in evaluating ARNP Duyvejonck's opinion.  *See* Def.'s Obj. 1–4.  The Court will review this issue de novo.  Neither party objects to Judge Hawley's remaining findings,[2] and having reviewed the motions, record, and R&R, the Court finds that those portions of the R&R are not clearly erroneous.

   b. **Evaluation of ARNP Duyvejonck's Opinion**

Rebekah claims that the ALJ erred in his assessment of ARNP Duyvejonck's opinion because he failed to address the consistency and supportability of the opinion, which is required by the applicable regulations.  Pl.'s Mem. Supp. Mot. Summ. J. 9–14.  She further argues that the ALJ "committed harmful legal error by playing doctor in assessing the impact of [Rebekah's] intractable headaches" rather than relying on ARNP Duyvejonck's expert opinion.  *Id*. at 8–9.

When evaluating a medical opinion, an ALJ must consider several factors, the most important being the supportability and consistency of the opinion.  20 C.F.R. §§ 404.1520c(b)(2), (c).  Under the factor of supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be."  *Id*. § 404.1520c(c)(1).  Under the factor of consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the

---

[2] The Commissioner's objection does not explicitly state that she intends to object only to Judge Hawley's finding as to ARNP Duyvejonck's opinion.  However, she discusses only that recommendation in the objection and makes no reference to his findings as to the RFC narrative explanation or the ALJ's credibility finding, *see* Def.'s Obj. 1–4, so the Court concludes that the Commissioner does not object to those findings.  *See* Civil LR 72.2(B) ("[Any] objection [to an R&R] must specifically identify the portions of the [R&R] to which objection is made and the basis for the objection . . . .").  Nevertheless, these two findings rest on the same foundation as Judge Hawley's finding as to ARNP Duyvejonck's opinion, *see* R&R 10, and so any objection to the former would be overruled on the same basis as the latter.  *See infra* Section II(b).

5

more persuasive the medical opinion(s) . . . will be. *Id*. § 404.1520c(c)(2). Because of these factors' importance, the ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions . . . in [a claimant's] determination or decision." *Id*. § 404.1520c(b)(2).

In the medical opinion in question here, titled "General Medical Source Statement," ARNP Duyvejonck opined that due to Rebekah's chronic migraines, she had a "[m]arked" impairment in being able to perform activities of daily living, would be likely to miss work four or more times per week, and would require four to eight additional breaks of 15–30 minutes per workday. R. 700–01. ARNP Duyvejonck also indicated that Rebekah had experienced episodes of decompensation and provided her opinion of Rebekah's limitations due to her depression. R. 701–02. As a result, ARNP Duyvejonck concluded that Rebekah was unable to engage in competitive employment. R. 700. The ALJ found this opinion "not persuasive" because "[t]here [wa]s no support for the statement that [Rebekah's] symptoms are disabling"; "[t]here [wa]s no evidence of repeated episodes of decompensation, no formal mental health treatment and no evidence she ha[d] marked limitations [due to her depression]"; ARNP Duyvejonck was "not a mental health provider"; and she "consistently document[ed] normal neurological exams, normal psychiatric exams, and indicate[d] [Rebekah] improved with migraine injections and medications." R. 20.

While the General Medical Source Statement itself does not cite to specific evidence or notes from appointments in support, the record as a whole is replete with documentation from ARNP Duyvejonck and other medical professionals that indicates that Rebekah suffered from severe headaches; that she underwent significant testing to rule out other potential causes of her headaches; and that she cycled through a variety of medications, some of which were ineffective

6

and some of which would provide only temporary relief before her headaches became severe again. The ALJ addressed some of this evidence in his decision but referenced only the portions indicating improvement with medication and omitted wholesale the portions indicating subsequent increase in headache severity. *See* R. 19 ("Overall, [Rebekah] has shown improvement with treatment, and there is no evidence of emergent treatment.").

The ALJ's exclusion of the evidence contrary to his conclusion—and which would support ARNP Duyvejonck's opinion—is best illustrated by a sampling of Rebekah's pertinent medical records:

- At a January 9, 2019 appointment with ARNP Duyvejonck, Rebekah was prescribed sumatriptan for acute headache treatment. R. 386.
- At a March 4, 2019 appointment with family practice physician Dr. Nicholas Crippin, Rebekah reported that "the sumatriptan help[ed] some when she t[ook] it 2–3 times per week but d[id] not alleviate the headache." R. 368.
- At an April 23, 2019 appointment with Dr. Crippin, Rebekah reported that she had been on Imitrex to treat her headaches but that it "did not really help much." R. 364. She had tried going to physical therapy but "could not tolerate" it, as "[i]t caused her pain to worsen." R. 364.
- At a May 2, 2019 appointment with ARNP Duyvejonck, Rebekah was prescribed amitriptyline for daily use and rizatriptan for acute migraine treatment. R. 376.
- At a July 2019 appointment, ARNP Duyvejonck noted that Rebekah "continue[d] with intractable headaches" and that amitriptyline "caused side effects." R. 563. Rebekah was prescribed propranolol, naratriptan, and metoclopramide "to see if this w[ould] be helpful." R. 563.
- At a September 20, 2019 appointment with Dr. Crippin, Rebekah reported that she was still on propranolol and metoclopramide but "[h]a[d] not noticed much improvement at this time." R. 619.
- On November 15, 2019, Dr. Crippin noted that Rebekah "continue[d] to have chronic daily headaches" which "affect[ed] her more than half the days of the month." R. 621. He stated that "[s]he ha[d] been on amitriptyline[ and] propranolol which she did not tolerate or were not effective" and that "[s]he ha[d] tried near Triptan [sic], sumatriptan and [wa]s currently on rizatriptan for abortive therapy" but that "these d[id] not work very well either." R. 621.
- At a January 13, 2020 appointment with Dr. Crippin, he noted that Rebekah "was started on Aimovig about a month ago and [wa]s due for [a] 2nd dose on the 17th." R. 670. Rebekah reported that her symptoms improved substantially, especially in the first week after receiving a dose, and that "the number of headaches ha[d] remained about the same but the severity [wa]s much more manageable." R. 670.

7

- At a March 24, 2020 appointment with Dr. Crippin, he wrote that Rebekah "ha[d] been relatively stable for her headaches" and that "[t]here ha[d] been some mild improvement with [her] current regimen." R. 666.
- At a June 3, 2020 appointment with ARNP Duyvejonck, ARNP Duyvejonck noted that Rebekah's migraine pain was a three to four out of ten and "tolerable" in the two weeks after receiving an injection of Aimovig, but during the subsequent two weeks, her migraine pain increased to an eight to ten out of ten. R. 694.
- At a November 11, 2020 appointment with ARNP Duyvejonck, ARNP Duyvejonck noted that Rebekah was taking Ajovy every 28 days for migraine prevention and that she would "have only mild headaches [for two] weeks after taking [an] injection but then severity [would] increase[] again." R. 697. Included with this note was a list of the medications Rebekah had been prescribed for preventative and acute migraine treatment, most of which were labeled "ineffective." R. 698.
- At a February 11, 2021 appointment with ARNP Duyvejonck, ARNP Duyvejonck noted that Rebekah was taking Ajovy monthly for migraine prevention, which was helpful for two weeks but would then wear off; the "benefit seem[ed] to be declining." R. 754. Other medications were found to "have not bee[n] helpful." R. 754. ARNP Duyvejonck decided to discontinue Ajovy and begin a new medication regimen. R. 756.

The ALJ's omission of much of this evidence constitutes harmful error even beyond his assessment of the supportability and consistency of ARNP's opinion: an ALJ "may not ignore entire lines of contrary evidence," *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012), which the ALJ blatantly did here. By selecting only facts that supported his conclusion and ignoring evidence indicating that Rebekah's headaches were not successfully treated by medication, he failed to build a logical bridge from the evidence to his conclusion. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

Moreover, the ALJ committed legal error by interpreting objective evidence of medical testing on his own rather than relying on the interpretation of medical experts. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *see Blakes v. Barnhart*, 331 F.3d

565, 570 (7th Cir. 2003) (reversing the Commissioner's decision denying benefits where the ALJ concluded that certain objective evidence was inconsistent with the claimant's diagnosis "because no expert offered evidence to that effect"). In support of his conclusion that "[t]he evidence does not show that [Rebekah's] headaches are disabling," the ALJ noted that "December 2018 imaging of her head was unremarkable" and that neurology specialists "found generally normal neurological exams." R. 19. But as Rebekah notes, "normal test results are not inconsistent with a disabling migraine diagnosis"—in contrast, such testing supports a diagnosis of migraines because it *rules out other causes* of Rebekah's headaches. *See* Pl.'s Mem. Supp. Mot. Summ. J. 12–13; *see, e.g.*, R. 383 (directing that various neurological testing be obtained to "rule out" other causes). In a similar case, the Seventh Circuit found that an ALJ failed to build a logical bridge between evidence relating to the claimant's headaches and his decision denying her benefits because "the ALJ reliance on [the claimant's] 'unremarkable' 2008 MRI as evidence that her migraines were not a significant problem is not supportable," as "[d]octors use MRIs to rule out other possible causes of headache . . . meaning that an unremarkable MRI is completely consistent with a migraine diagnosis." *Moon v. Colvin*, 763 F.3d 718, 722–23 (7th Cir. 2014) (emphasis omitted); *see also id*. at 722 ("This mistaken reading of the evidence illustrates why ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves."). Likewise, here, the ALJ's conclusion that unremarkable neurological findings meant that Rebekah's headaches were not disabling, in the absence of medical expert evidence to that effect, constitutes error.

Because substantial evidence does not support the ALJ's conclusion, *see Barnett*, 381 F.3d at 668, the Commissioner's decision denying Rebekah benefits must be reversed.

## CONCLUSION

For the foregoing reasons, Defendant Acting Commissioner of Social Security Kilolo Kijakazi's ("the Commissioner") objection, ECF No. 19, is OVERRULED, and Magistrate Judge Jonathan E. Hawley's report and recommendation ("R&R"), ECF No. 17, is ADOPTED. Plaintiff Rebekah D. M.'s motion for summary judgment, ECF No. 10, is GRANTED, and the Commissioner's motion for summary affirmance, ECF No. 14, is DENIED. Pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Commissioner's decision denying Rebekah benefits is REVERSED, and the case is remanded for further proceedings consistent with this order. The Clerk is directed to enter judgment and close the case.

Entered this 2nd day of March, 2023.

s/ Sara Darrow<br>
SARA DARROW<br>
CHIEF UNITED STATES DISTRICT JUDGE